UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NADIRA F., | ) |
| Plaintiff, | ) No. 21-cv-4464 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nadira F.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Defendant's motion for summary judgment [dkt. 12] is GRANTED; Plaintiff's motion for summary judgment [dkt. 9] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

**1. Background**

**1.1. Procedural History**

On November 4, 2015, Plaintiff protectively filed for Disability Insurance Benefits, alleging a disability onset date of January 1, 2012. [Administrative Record ("R.") 101.] Plaintiff later amended her onset date to March 4, 2014. [R. 49-51.] The Administrative Law Judge ("ALJ") issued a September 12, 2018 decision denying Plaintiff benefits, which this Court remanded on October 27, 2020 to allow the ALJ to address Plaintiff's post-traumatic stress disorder ("PTSD"). [R 101-13; R. 862-67.] This matter now comes before the Court again on the new decision by the ALJ. [R. 806-820; dkt. 1.]

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] Plaintiff has filed a Memorandum in Support of Reversing or Remanding Commissioner's Decision [dkt. 9], which the Court construes as a motion for summary judgment.

### 1.2. The ALJ's Decision

On June 22, 2021, the ALJ issued her second written decision denying Plaintiff disability benefits. [R. 806-20.] At Step One of that decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2012.[3] [R. 808.] At Step Two, the ALJ found that Plaintiff had the severe impairments of: depression; anxiety; and varicose veins. [*Id.*] The ALJ determined that Plaintiff had the nonsevere impairments of deep vein thrombosis; stomach pain; hyperlipidemia; lower back pain; ganglion cyst benign neoplasm of tissue subdermal nodule; and headaches. [R. 809.] The ALJ held that Plaintiff's carpal tunnel syndrome; goiter; and neck and arm pain were not medically determinable impairments prior to the date-last-insured. [*Id.*] Finally, the ALJ determined that Plaintiff's PTSD was "still found not to have been a severe medically determinable impairment prior to the sate-last-insured." [R. 809-810.]

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 810-11.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: she can learn, understand, remember, and carry out simple work instructions; she can make simple work-related decisions; she can work in a routine work environment with no more than occasional changes; she can do moderate-paced work where the employee sets the pace and has flexibility in the pace (she cannot work a strict production quota job or have hourly work quotas, nor work where there is a fast production rate or a machine sets the pace); she can have no more than occasional brief and superficial interaction with the general public; no more than occasional work-related interactions with coworkers;

---

[3] Although the ALJ confirmed with counsel at the hearing that the amended onset date still applies to Plaintiff's claim, the ALJ incorrectly relied upon the original onset date of January 1, 2012 in her decision. [R. 806, 807, 808, 819.] While Plaintiff notes this [dkt. 9, p. 2, fn. 1], she does not allege it is reversible error, so the Court has not considered this argument because it has been waived.

2

no team or tandem work; she can tolerate typical supervision common to unskilled work (supervisor or designee introduces the work tasks and after that no more than occasional work-related interactions); and she can sustain attention or concentration as necessary to complete the work tasks in two-hour increments throughout the typical workday. [R. 812-13.] At Step Four, the ALJ found Plaintiff had no past relevant work, but that other jobs existed in significant numbers in the national economy Plaintiff could perform. [R. 818-19.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 819-20.]

**2.      Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured ("DLI") to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's residual functional capacity ("RFC") in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735

F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. Under the substantial evidence standard, the court neither reweighs the record nor second-guesses the ALJ's judgment. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Further, while reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001.

**3.      Discussion**

Plaintiff alleges the ALJ erred in three ways in her June 22, 2021 decision: (1) the ALJ erred in her analysis of Plaintiff's PTSD; (2) the RFC failed to account for all of Plaintiff's mental limitations; and (3) the ALJ improperly weighed the medical opinions of Plaintiff's treaters. The Court disagrees with each of these contentions, as detailed below.

**3.1.    The ALJ Properly Assessed Plaintiff's PTSD**

Plaintiff again faults the ALJ for failing to include PTSD among her severe impairments at Step Two of her analysis. [Dkt. 9, pp. 9-11.] (Brf. at 9-11). The Court disagrees this is a remandable

4

error.

In the 14-page decision at issue, the ALJ devoted more than one entire single-spaced page of discussion to Plaintiff's PTSD, reasoning that the record made vague references to PTSD in the past, but noted that Plaintiff's current doctors and treatment providers generally did not diagnose PTSD. [R. 809-10.] Specifically, the ALJ found that "[w]hile the medical evidence does show [Plaintiff] to have had an initial diagnosis of posttraumatic stress disorder in March 2014, subsequent treatment notes showed her to receive treatment for depression, without the repeated diagnosis of posttraumatic stress disorder." [R. 810.] The ALJ went on to note that "[a] onetime diagnosis of posttraumatic stress disorder during an initial evaluation does not automatically determine that it is in fact a medically determinable impairment, especially in light of subsequent diagnoses of depression provided by the same examining doctor." [*Id.*] While the Court previously remanded this case because the ALJ failed to recognize that Plaintiff had been diagnosed with PTSD prior to her DLI [R. 864-65], this time around the ALJ has corrected that factual error and provided an evaluation of Plaintiff's PTSD medical history. The Court finds the ALJ's thorough analysis of Plaintiff's PTSD history more than adequate to support her conclusion that Plaintiff's PTSD was not a severe medically determinable impairment prior to the date last insured. Thus, this determination is supported by substantial *Richardson*, 402 U.S. at 401; *Zurawski*, 245 F.3d at 887.

But even if the ALJ should have found PTSD as severe at Step Two (the Court does not agree she should have), the result is inconsequential. Longstanding Seventh Circuit precedent has made clear that any error at Step Two is remedied when the ALJ continues with the sequential evaluation and includes all relevant limitations in the RFC finding. *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015) ("even if there were such an error at step 2, it would have been harmless because the ALJ properly considered all of [claimant's] severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3. So

even if there were a mistake at step 2, it does not matter"); *see Henke v. Astrue*, 498 F.App'x 636, 640 (7th Cir. 2012) ("Because the ALJ proceeded beyond Step 2, and considered [plaintiff's] severe and non-severe impairments at Step 4, any purported error in the Step-2 severity determination was harmless"); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) ("Regardless, this particular determination is of no consequence with respect to the outcome of the case. Because the ALJ recognized other severe impairments, he was obligated to proceed with the evaluation process"). Because the ALJ continued with the sequential evaluation process and included all relevant limitations in the RFC, any Step Two error regarding PTSD was harmless.

### 3.2. The ALJ's Mental RFC Finding is Supported by Substantial Evidence

As part of the RFC in this case, the ALJ included twelve mental RFC limitations. Those mental limitations included: (1) carrying out simple work instructions; (2) making simple work-related decisions; (3) routine work environments with no more than occasional changes; (4) no strict production quotas; (5) no hourly work quotas with fast production rates or where a machine sets the pace; (6) moderate-paced work where the employee sets the pace and has flexibility in that pace is permitted; (7) end of day goals only; (8) no more than occasional brief and superficial interaction with the public; (9) no more than occasional work-related interactions with coworkers; (10) no team or tandem work; (11) supervision typical with unskilled work such as occasional work-related interactions was permitted; and (12) sustaining attention and concentration to complete work tasks in two-hour increments throughout the typical workday. [R. 812-13.]

As an initial matter, the RFC is both more detailed and more restrictive than a simple limitation to "unskilled work" as Plaintiff implies. [Dkt. 9, p. 13.] In making this RFC assessment, the ALJ first detailed Plaintiff's allegations of nervousness, difficulties concentrating and completing tasks, and memory problems. [R. 813-14 (*referring to* R. 835-37).] The ALJ then compared these allegations to the evidence of record. [R. 814.] The ALJ noted that Plaintiff typically presented with depressed mood,

mood swings, and anxiety. [*Id.* (*referring to* R. 413-18).] But, the ALJ noted, with treatment, Plaintiff's sleep became better, her mood generally improved, and many mental examinations were unremarkable. [R. 815 (*referring to* R. 408, 497, 499, 503, 505).] The ALJ then turned to Plaintiff's January 2016 consultative psychological evaluation with Michael V. Ostrowski, Ed.D., which yielded mixed findings such as low energy, concentration difficulties and depressed mood alongside unremarkable insight and judgment, an ability to perform simple math, and a cooperative attitude. [R. 815; *referring to* R. 489-93).]

To help determine Plaintiff's abilities, the ALJ turned to the five medical opinions of record regarding Plaintiff's mental functioning. The first opinion was a February 2016 opinion from State agency psychologist Courtney Zeune, Psy.D., who opined that Plaintiff could complete one-to-four step tasks that were short and repetitive; could not perform rapid pace work or meet strict production quotas; could have superficial interaction with a small group of familiar coworkers with limited public contact; and could adapt to minor and infrequent changes in her workplace routine. [R. 79-80.] In July of 2016, State agency psychologist Loretta McKenzie, Psy.D. offered a similar opinion, finding Plaintiff capable of simple one-to-two step tasks; short and repetitive tasks; no rapid pace or meeting of strict production quotas; interacting with a small group of coworkers in a superficial manner with limited public contact; and adapting to minor and infrequent workplace changes. [R. 92-94.] The ALJ accorded some weight to these two opinions, effectively spelling out more specific limitations in her RFC finding. [R. 816.]

The next three opinions the ALJ generally rejected as being too heavily reliant on Plaintiff's subjective allegations, at odds with Plaintiff's improvement and many generally unremarkable mental examinations, and that they were less compelling than the opinions of Drs. Zeune and McKenzie. [R. 816-17; *see* Section 3.3, *infra*.] The opinions the ALJ rejected included an October 2017 mental RFC form filled out by licensed clinical social worker ("LCSW") Bina Mangattukattil, who concluded

7

Plaintiff would be off-task for more than 30-percent of the workday; absent six days per month; and would only be 20-percent as efficient as the average coworker. [R. 643-46.] Next, treating psychiatrist Anjum N. Khaja, M.D. completed a similar form also in October of 2017, finding that Plaintiff would be off-task for 30-percent of the workday, miss more than six days of work each month, and would be 60-percent as efficient as the typical coworkers. [R. 648-51.] And third, Dr. Khaja completed a second mental RFC form in May of 2021 that offered a more positive depiction of Plaintiff's abilities, this time finding she would be off-task for only 10-percent of the workday (as compared to 30-percent); would be absent two days or less (as compared to six or more); and would be 80-percent as efficient as a typical coworker (compared to 60-percent). [R. 1151-54.] Each of these opinions was rejected by the ALJ (as discussed more fully in Section 3.3, *infra*).

The ALJ drew a clear logical bridge from the many unremarkable examination findings and signs of improvement, coupled with the opinions of Drs. Zeune and McKenzie, to her highly detailed mental RFC finding and its 12 limitations. The ALJ has explained her reasoning with enough detail to permit this Court to review and understand the ALJ's reasoning in formulating Plaintiff's RFC. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[i]n addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Plaintiff's opposition to the ALJ's formulation of the mental RFC in this matter essentially amounts to reasons to credit the opinions of LCSW Mangattukattil and Dr. Khaja.[4] [Dkt. 9, p. 15.]

---

[4] Plaintiff also asserts the ALJ failed to consider the regulatory factors listed in 20 C.F.R. 404.1527(c)(2). The Court considers Plaintiff's two sentence argument on this point so skeletal as to be waived. [Dkt. 9, p. 15.] *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("even arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law"). Moreover, Plaintiff does not allege any of these regulatory factors would have altered the ALJ's decision, leading the Court to conclude that any such omission on the ALJ's part would have constituted a harmless error, unworthy of remand. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same"). Although not explicitly referring to the regulatory factors, the Court finds the ALJ adequately detailed how these opinions were consistent with and supported by the record.

However, ALJs are allowed great discretion in choosing which opinions to credit. *Wilson v. Berryhill*, 737 F.App'x 286, 290 (7th Cir. 2018) ("[a]n ALJ has substantial discretion regarding which doctor to believe…and the ALJ gave suitable reasons for acting within that discretion here"). Here, the Court here finds the ALJ gave suitable reasons for the RFC limitations she included (or did not include) based on the medical opinions of record she found persuasive. It is not enough that reasonable minds might have differed in their interpretation of this evidence, only whether a reasonable adjudicator could have agreed with the ALJ's reasoning. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) ("even if reasonable minds could differ concerning whether [the claimant] is disabled, [the Court] must nevertheless affirm the ALJ's decision denying [claimant's] claims if the decision is adequately supported"). The Court here finds no reversible error in the ALJ's formulation of the mental RFC in this matter. The Court will not remand on this basis.

### 3.3. The ALJ Properly Considered the Opinions of Plaintiff's Treaters

When it comes to medical opinions, as long as an ALJ provides good reasons for adopting or discounting certain opinions, the Court must affirm the ALJ's decision. *Elder*, 529 F.3d at 415; *see also*, fn. 4, *supra*. This minimal level of articulation required is a very deferential standard that the Seventh Circuit has deemed "lax." *Id*. Plaintiff complains (without even naming the treatment providers to whom she is referring) that the reasons the ALJ gave for rejecting the opinions of LCSW Mangattukattil and Dr. Khaja, were unsupported. [Dkt. 9, p. 15.]

In addressing the opinion of LCSW Mangattukattil, the ALJ offered four reasons for discounting her October 2017 opinion. [R. 816.] First, the ALJ noted that as a social worker, LCSW Mangattukattil was a non-acceptable medical source under 20 C.F.R. § 404.1527(f). [*Id*.] While this was not reason enough to discount the opinion, the ALJ also found LCSW Mangattukattil to be overly reliant on Plaintiff's self-reports of her symptoms, which caused the ALJ to favor the opinions of two psychologists over that of the social worker. [*Id*.] *Lehouillier v. Colvin*, 633 F.App'x 328, 335 (7th Cir.

9

2015) (ALJ properly discounted opinion that focused on claimant's own assessment of symptoms). Indeed, the bulk of LCSW Mangattukattil's support for her opinions alluded to Plaintiff's self-reports and other reporting, as opposed to objective references to the record. [R. 643, 646.] The ALJ also discounted LCSW Mangattukattil's opinion because it postdated the date last insured of December 2016 by nearly ten months. [R. 816.] *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) (noting that "if she was not disabled by [the relevant period], she cannot obtain benefits even if she is disabled now"). When asked if Plaintiff's symptoms were present during the January 2012 to October 2016 relevant period, LCSW Mangattukattil checked a box indicating "probably." [R. 643.] Thus, it was fair for the ALJ to question the degree to which Plaintiff's symptoms existed (and to what degree) during the relevant period. Finally, the ALJ simply credited other opinions such as those of Drs. Zeune and McKenzie, favoring those more consistent and supported opinions over that of LCSW Mangattukattil. [R. 816.] The Court finds these to be valid reasons for discounting the opinion of LCSW Mangattukattil.

The ALJ also offered at least six compelling reasons for discounting the two assessments of Dr. Khaja. [R. 816-17.] First, the ALJ noted that in contrast to Dr. Khaja's dire assessment, the record reflected continued improvement with treatment. [R. 815-17 (*referring to* R. 408, 412).] Although, as the Seventh Circuit has pointed out, improvement itself is not indicative of whether an individual is well enough to meet the legal criteria of not being classified as disabled. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). Here, the ALJ's continued analysis of Dr. Khaja's opinion in concert with the rest of the medical record allowed the ALJ to determine Plaintiff was capable of sustaining a variety of modified light work. [R. 812-18.] Second, and in line with the notes showing improvement with treatment, the ALJ noted how Plaintiff displayed unremarkable findings at many examinations. [R. 815 (*referring to* R. 497, 499, 503, 505, 561).] Third, the ALJ pointed out that there was some question as to whether Dr. Khaja's opinions – both of which postdated Plaintiff's December 2016 date last insured

10

– related back to the relevant period. [R816-17.] Dr. Khaja's October 2017 opinion did not list a date where symptoms began (in fact, the doctor left a blank space when asked when Plaintiff's limitations began), while her May of 2021 opinion offered March of 2014 as the date symptoms began (which appears to be the amended onset date pre-typed onto the form instead of handwritten by the doctor). [R. 648, 1151.] Further casting doubt in the ALJ's mind as to the reliability of Dr. Khaja's opinions based on their timing was the fact that "while Dr. [Khaja] indicated that treatment started with the claimant in May 2016, there are no treatment notes from this doctor at this time, and [Plaintiff's] first visitation with Dr. [Khaja] took place after the date-last-insured."[5] [R. 817.] Fourth, the ALJ found Dr. Khaja's opinions to be internally inconsistent in that they assessed the highest level of restriction in making simple work-related decisions while at the same time finding the lowest level of restriction in completing short and simple instructions. [R. 649, 817.] Fifth, Dr. Khaja's May 2021 opinion was far less limiting than her October 2017 opinion with no explanation for why Plaintiff's symptoms had greatly reduced, causing the ALJ to question the consistency of Dr. Khaja's assessments.[6] [R. 817; 20 C.F.R. § 1527(c)(4).] While ALJs are required to articulate findings of improvement in their decisions, ALJs may discount doctors who do not spell out their findings. SSR 96-8p; *Kuykendoll v. Saul*, 801 F.App'x 433, 438 (7th Cir. 2020) ("ALJ was entitled to expect some explanation to accompany" the doctor's limitations). The ALJ found the unexplained inconsistency between Dr. Khaja's two assessments particularly troublesome because "[t]reatment notes in the interim do not show any significant change in treatment; in fact, both questionnaires list the same medications and dosages being prescribed to the [Plaintiff]." [R. 817.] And finally, the ALJ simply credited other more consistent opinions such as those of Drs. Zeune and McKenzie over the unsupported and inconsistent opinions

---

[5] The Court has edited the doctor's name in this quote because it seems the ALJ transposed the first and last names of Dr. Anjum Khaja in her opinion. [*See* R. 816-17.]

[6] While Plaintiff argues Dr. Khaja's assessments should have been bolstered by her findings of improvement between October of 2017 and May of 2021 [dkt. 9, p. 15], there is one major deficit in Plaintiff's argument: Dr. Khaja was supposed to be assessing Plaintiff's condition for the relevant period of January 2012 through December 2016.

11

of Dr. Khaja in determining the RFC. [R. 816-17.] Ultimately, the Court finds the ALJ set forth an adequate logical bridge detailing why she discounted Dr. Khaja's opinions in favor of other opinions more consistent with Plaintiff's history of improvement and unremarkable findings.

While Plaintiff argues it was error for the ALJ to credit the State psychological opinions over Dr. Khaja, a treating psychiatrist [dkt. 9, p. 15], the Seventh Circuit has reiterated that the substantial evidence standard applies to the Court's review of an ALJ's decision to give more weight to state-agency doctors' opinions than those of a treating physician. *Pytlewski v. Saul*, 791 F.App'x 611, 615 (7th Cir. 2019). Again, this means the ALJ must support her decision with "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Elder*, 529 F.3d at 413. The Court finds the ALJ pointed to such relevant evidence in (i) the opinions of Drs. Zeune and McKenzie; (ii) Plaintiff's many unremarkable examination findings; and (iii) Plaintiff's improvement with treatment. The ALJ has more than "minimally articulated" her justification for crediting other evidence over the opinions of Dr. Khaja. *Berger*, 516 F.3d at 545. Thus, the ALJ's decision in this respect enjoys the support of substantial evidence. The Court will not overturn the ALJ's decision on this basis.

4. **Conclusion**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence. Defendant's motion for summary judgment [dkt. 12] is GRANTED; Plaintiff's motion for summary judgment [dkt. 9] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: 12/8/2022**

Susan E. Cox,
United States Magistrate Judge